UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF ALABAMA

IN RE:

TRINSIC, INC. ET. AL.,                                                     Case No. 07-10324

        Debtors.

MICHEL REIBLING, TRUSTEE                        Adv. Case No. 07-1089
OF THE ESTATES OF
TRINSIC, INC.,
TRINSIC COMMUNICATIONS, INC.,
TOUCH 1 COMMUNICATIONS, INC.,
Z-TEL NETWORK SERVICES, INC., and
Z-TEL CONSUMER SERVICES, LLC.

        Plaintiff,

vs.

THERMO CREDIT, L.L.C.,

        Defendant.

**REPORT AND RECOMMENDATION TO THE DISTRICT COURT TO WITHDRAW REFERENCE OF THE TRIAL OF ALL COUNTS OF TRINSIC'S COMPLAINT EXCEPT THE ACCOUNTING REQUESTS IN COUNTS 9 AND 10, BUT ONLY AFTER THE BANKRUPTCY COURT CERTIFIES THAT ALL DISCOVERY AND PRETRIAL PROCEEDINGS ARE COMPLETE**

Russel Myles, attorney for Trustee, Michael C. Reibling
Richard M. Gaal, attorney for Trustee, Michael C. Reibling
Jeffery J. Hartley, attorney for Thermo Credit, LLC

       Before the Court is Thermo Credit L.L.C.'s Motion to Withdraw the Order of Reference and the Trustee's Objection to the Motion. The Court does not have jurisdiction to hear this matter and is forwarding it to the District Court with its report and recommendation. For the reasons indicated below, the Court concludes that all counts of Trinsic's complaint, except the

1

accounting counts, have a jury trial right. Due to this conclusion, the Court reports and recommends to the District Court that it deny withdrawal of the reference of the accounting claim and grant withdrawal of the reference as to the other claims, but only after the Bankruptcy Court certifies that it has handled all pretrial matters and the case is ready for trial.

## FACTS

Trinsic, Inc., Trinsic Communications, Inc., Touch 1 Communications, Inc., Z-Tel Network Services, Inc., and Z-Tel Consumer Services, LLC filed voluntary Chapter 11 bankruptcy petitions on February 7, 2007. Trinsic, Inc. owns one hundred percent of the equity in each of the listed debtors' company (therefore, for convenience, Debtors will be referred to as "Trinsic"). Trinsic's case was converted to a Chapter 7 proceeding on April 24, 2007and a trustee, Michael C. Reibling, was appointed.

The manner in which Trinsic and Thermo became involved with each other is described in Thermo's complaint. The facts stated below are contained in Trinsic's complaint. The Court is not holding that the facts alleged are true. They are restated here only to give context to the claims asserted.

In 2004, Trinsic sought financing to keep its telecommunication business competitive. When it could not get a conventional loan, it entered into a "Receivables Sales Agreement" with Thermo Credit, L.L.C. (hereinafter "Thermo"). Under the Receivables Sales Agreement, Thermo would typically receive all of Trinsic's receivables and, after paying fees and expenses, loan Trinsic a sum of money less than the full amount of the receivables. By the time Trinsic realized what the Receivables Sales Agreement actually cost, it was in a worse financial situation than before the agreement was signed, and it was impossible to obtain alternate financing.

2

In 2004-2005, Trinsic hired new management that improved its financial situation. The new management reduced Trinsic's liabilities from $85 million to $65 million. Trinsic attempted to renegotiate its receivables agreement with Thermo, but, despite the financial improvement, Thermo refused.

In the fall of 2006, American Communications Network, Inc. ("ACN") inquired about acquisition of Trinsic. By January 2007, ACN had negotiated an agreement for the purchase of Trinsic by ACN for $50 million. Due diligence was complete and only minor negotiations remained. However, on January 25, 2007, Thermo told Trinsic it would no longer perform under the Receivables Sales Agreement. Trinsic advised Thermo of its deal with ACN and informed Thermo that if funding was terminated, the deal with ACN would fail and Trinsic would probably be forced into bankruptcy. ACN also asked Thermo to continue its funding, but Thermo refused.

For the next 14 days, Thermo directed which bills Trinsic could pay and funded only those payments. The deal with ACN fell through and Trinsic declared bankruptcy because of Thermo's failure to perform per the Receivables Sales Agreement. At the time Trinsic declared bankruptcy, there was an ongoing dispute with Thermo about the amount of collections that were due to be returned to Trinsic under the loan formula.

During the bankruptcy proceeding, Trinsic filed a motion seeking the Court's authorization to sell most of its assets and assign certain executory contracts and unexpired leases. Trinsic proposed to pay its creditors, with the exception of Thermo, money from the sale proceeds. Trinsic wanted to escrow Thermo's share of the proceeds until Trinsic resolved its conflicts with Thermo. Thermo objected to the manner in which Trinsic planned to distribute the

3

sales proceeds and insisted it was entitled to six million dollars of proceeds at the same time the other creditors were paid. Thermo asserted it had performed all its obligations to Trinsic under the Receivables Sales Agreement and should be paid. On March 22, 2007, Trinsic's Sale Motion was heard by the Court. One of the issues to be decided was the distribution of the proceeds. Thermo was present at the hearing and presented arguments in support of its position. Thermo stated at the hearing, "[w]e are happy to submit ourselves to the jurisdiction of this Court and if and when any adversary proceeding is filed, we won't argue about jurisdiction, we'll - - it'll happen right here." (March 22, 2007 Hearing Tr., p.25, lines 15-18). The Court approved Trinsic's Sale Motion and ordered that Thermo be paid $6 million from the sale due to its liens against Trinsic.

Trinsic filed this adversary proceeding against Thermo on November 16, 2007. The complaint contains eleven counts, including fraudulent transfers (counts 1 and 4), conversion (counts 2 and 5), preference (count 3), disgorgement (counts 6, 7, 8 and 9), disgorgement and accounting (counts 9 and 10), and breach of contract (count 11). Thermo never filed a proof of claim in the case. Thermo did file an answer to Trinsic's adversary complaint on December 20, 2007 and filed a counterclaim and a third-party complaint. Pursuant to Rule 9015 of the *Federal Rules of Bankruptcy Procedure* and Rule 38 of the *Federal Rules of Civil Procedure*, Thermo demanded a trial by jury in its answer/counterclaim. The counterclaim seeks reimbursement and indemnity from Trinsic in the event it is liable on any of the claims. Thermo also filed a motion for withdrawal of the reference of this case to the Bankruptcy Court under 28 U.S.C. § 157(d) and Rule 5011(a) of the *Federal Rules of Bankruptcy Procedure.* It stated that cause existed for the District Court to withdraw its reference because Thermo had requested a jury trial and a jury

4

trial could only be conducted in the District Court. Trinsic filed an objection to Thermo's motion for withdrawal of reference alleging that there was no "cause" for it. Thermo has no right to a jury trial on any of the counts because they are core proceedings. Also, Thermo consented to the Bankruptcy Court having jurisdiction over the adversary case (orally at the March 22, 2007 hearing and by submitting its counterclaim and third-party claim) and, therefore, waived its right to a jury trial.

**LAW**

Bankruptcy courts have authority to preside over certain cases and proceedings regarding bankruptcy matters through the referral of all bankruptcy cases to the bankruptcy court in courts which have entered an order automatically accomplishing the referral. 28 U.S.C.§ 157(a). Such an order has been entered in this District. Standing Order of Reference, U.S. District Court, Southern District of Alabama, effective July 10, 1984. The district court may withdraw referral of a case (in whole or in part) on its own motion or by timely motion by a party for "cause." 28 U.S.C. § 157(d). This matter before the Court is on Thermo's motion for withdrawal and Trinsic's objection to that motion. Thermo insists, since it has demanded a jury trial, there is "cause" for the District Court to withdraw its referral to the Bankruptcy Court of this case. Since bankruptcy courts do not have the authority to conduct jury trials, unless the parties consent (and Thermo has not consented), 28 U.S.C. § 157(e), the case, to the extent a jury trial is required, will have to be tried in District Court, even if the claims are ones that the Bankruptcy Court can hear without a jury. There are other grounds that have been considered by courts as well in determining whether all or any part of a case should be tried by a District Court. *See Hvide Marine Towing, Inc. v. Kimbrell (In re Hvide marine Towing, Inc.)*, 248 B.R. 841, 844 (M.D.

5

Fla. 2000) (considering whether or not there was a jury demand, whether the claim is core or non-core, and efficient use of judicial resources as factors in determining "cause"). The burden to show "cause" under § 157(d) is on the movant, Thermo. *NDEP Corp. v. Handle-It, Inc. (In re NDEP Corp.)*, 203 B.R. 905, 907 (D. Del. 1996). The Eleventh Circuit has suggested the following factors to be analyzed in determining if there is cause for withdrawal: "advancing uniformity in bankruptcy administration, decreasing forum shopping and confusion, promoting the economical use of the parties' resources, and facilitating the bankruptcy process." *In re Parklane/Atlanta Joint Venture*, 927 F.2d 532, 536 n.5 (11th Cir. 1991) (quoting *Holland America Ins. Co. v. Succession of Roy*, 777 F.2d 992, 998 (5th Cir. 1985)).

The issue before the Court is what, if any, matters should, or must, be returned to the District Court? The first step in analyzing if there is cause for withdrawal is to determine if Thermo has a jury trial right. The second step is to determine if Thermo has consented to the jurisdiction of the Bankruptcy Court during the March 22, 2007 hearing. The third step is to decide whether or not the filing of a counterclaim and third party complaint in the adversary case constitutes consent to the jurisdiction of the Bankruptcy Court. If it is determined that Thermo is entitled to a jury trial and Thermo has not consented and will not consent to the jurisdiction of the Bankruptcy Court, then the referral of the District Court should be withdrawn as to the claims with a jury trial right. The fourth step, as to claims that do not have a jury trial right, requires that the Court must consider whether there is any other "cause" for withdrawal of the reference as to those claims.

**A.**

JURY TRIAL RIGHT

6

The Eleventh Circuit recognizes that the 'right to a jury trial is fundamental, courts must indulge every reasonable presumption against waiver.' *Control Center, L.L.C. v. Lauer*, 288 B.R. 269, 283 (M.D. Fla. 2002) (quoting *Burns v. Lawther*, 53 F.3d 1237, 1240 (11th Cir. 1995)). "'The right to a jury trial shall be preserved ... inviolate', and a court's discretion 'is very narrowly limited and must, wherever possible, be exercised to preserve jury trial.'" *Id.* (quoting *Borgh v. Gentry*, 953 F.2d 1309, 1311 (11th Cir. 1992)).

The analysis of whether Thermo has a jury trial right in this case begins with the case of *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33 (1989). That case held that a party who had not submitted a proof of claim in a bankruptcy case had a right to a jury trial when sued by the bankruptcy trustee to recover a fraudulent transfer. The Court used a two part test.

> First, we compare the statutory action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity. Second, we examine the remedy sought and determine whether it is legal or equitable in nature. The second stage of this analysis is more important than the first. If, on balance, these two factors indicate that a party is entitled to a jury trial under the Seventh Amendment, we must decide whether Congress may assign and has assigned resolution of the relevant claim to a non-Article III adjudicative body that does not use a jury as factfinder.

*Id*. at 42 (citing *Tull v. U.S.*,481 U.S. 412, 417-18, 421) (internal citations omitted). The test is whether the claim asserted is a legal or equitable one. "The United States Supreme Court has long recognized that, as a general rule, monetary relief is legal in nature, and that claims for such relief give rise to a right to trial by jury. *Control Center,* 288 B.R. at 278 (citing *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 352 (1998)).

According to this test, the accounting claims in counts 9 and 10 are strictly an equitable claim which seeks no monetary recovery and therefore has no jury trial right attached. *Phillips v.*

7

*Kaplus*, 764 F.2d 807, 813 (11th Cir. 1985) (finding accounting has "traditionally been considered an equitable form of action"). The other claims all seek monetary damages and therefore are legal in nature. These claims, except for the preference claim, could be brought in a court without a pending bankruptcy case. They are not dependent upon the Bankruptcy Code for their existence. *See Control Center*, 288 B.R. 277. According to case law, a jury trial right has been afforded such claims in other courts. *See Granfinanciera*, *supra* (fraudulent transfer); *McCord v. Papantoniou*, 316 B.R. 113 (E.D.N.Y. 2004) (fraudulent transfer and conversion); *Control Center*, *supra* (conversion); *Langenkamp v. Culp*, 498 U.S. 42 (1990) (preference); *Sigma Micro Corp. v. Healthcentral.com (In re Healthcentral.com)*, 504 F.3d 775 (9th Cir. 2007) (preference); *Debaillon v. Steffes,* 195 B.R. 362 (M.D. La. 1996) (holding that action characterized as seeking disgorgement was really a suit for money damages); *McCord*, *supra* (holding that accounting proceeding is equitable in nature).

### B.

### CORE V. NONCORE PROCEEDINGS

The District Court has referred to the Bankruptcy Court in this District all proceedings or cases "arising under," "arising in," or "related to a case under title 11." 28 U.S.C. § 157(a). If a referred matter is a "core" proceeding, a bankruptcy court may enter final orders or judgments as to the claims involved. 28 U.S.C. § 157(b)(1). If a matter is a non-core proceeding, a bankruptcy court may not enter a final order or judgment resolving the claim, but must issue a report and recommendation to a district court as to what should be entered. 28 U.S.C. § 157(c)(1). If the allegation or proceeding is one that "does not invoke a substantial right created by the federal

8

bankruptcy law and is one that could exist outside of bankruptcy[, it] is not a core proceeding." Control Center, 288 B.R. at 276-77.

Section 157(b)(2) lists matters that are core proceedings. They include "allowance or disallowance of claims against the estate," 28 U.S.C. § 157(b)(2)(B); "proceedings to determine, avoid or recover preferences," 28 U.S.C. § 157(b)(2)(F); "proceedings to determine, avoid or recover fraudulent transfers," 28 U.S.C. § 157(b)(2)(H); and "other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor . . . relationship," 28 U.S.C. § 157(b)(2)(O). Therefore, at least the preference and fraudulent transfer claims are core proceedings. If 28 U.S.C. § 157(b)(2)(O) is read broadly,[1] even the disgorgement and breach of contract claims could be considered to be core.

However, even if a matter is a core proceeding, that fact does not destroy a jury trial right if validly claimed. *Germain v. Connecticut Nat'l Bank*, 988 F.2d 1323 (2nd Cir. 1993); *RDM Sports Group, Inc., et al. v. Equitex, Inc., et al.*, 260 B.R. 915, 919 (Bankr. N.D. Ga. 2001). In this case, since all the claims, except the accounting claims, involve legal remedies, the jury trial demand remains viable.

The jury trial right can be negated if a creditor has filed a claim in the bankruptcy case. *SNA Nut Co. v. Haagen-Dazs Co., Inc.*, 302 F.3d 725 (7th Cir. 2002). However, Thermo filed no proof of claim, so it has not subjected itself to the claims adjudication process of the court.

---

[1] *Southeastern Sprinkler Co., Inc. v. Meyertech Corp.*, 831 F.2d. 410 (3rd Cir. 1987) (stating that "[i]t is difficult to perceive of a proceeding which would not fall under the all-encompassing language of either § 157(b)(2)(A) or § 157(b)(2)(O), but we are cautioned that an expansive interpretation of these provisions may lead to some seemingly incorrect and overbroad results.").

9

# C.

## CONSENT TO BANKRUPTCY COURT JURISDICTION BY STATEMENT IN COURT

Trinsic contends that Thermo consented to a trial of this adversary proceeding in the Bankruptcy Court by its comments made through counsel during the March 22, 2007 hearing and is now estopped from electing to litigate in a different forum. Thermo did state at the hearing, "[w]e are happy to submit ourselves to the jurisdiction of this Court and if and when any adversary proceeding is filed, we won't argue about jurisdiction, we'll - - it'll happen right here." (March 22, 2007 Hearing Tr., p.25, lines 15-18). However, after presiding over the hearing and reviewing the entire transcript of the March 22, 2007 hearing, the Court does not believe that Thermo consented to the jurisdiction of the Court for adjudication of <u>all</u> the claims in the adversary case.

The March 22, 2007 hearing was on Trinsic's motion to sell the business to Tide Acquistion Corporation, n/k/a Matrix Telecom, Inc. Thermo argued at the hearing that it should receive full payment of the amount Trinsic owed under its postpetition loan facility at closing. Trinsic asserted that Trinsic's payoff should be escrowed until all issues with Thermo had been resolved. Thermo made arguments that acknowledged the possibility that an adversary case might be filed, but stated that it would not try to stop the bankruptcy process or procedures. Thermo stated that it would allow the Trinsic case to proceed and would "submit . . . to the jurisdiction of the Court" if any adversary case was brought. Thermo did not believe that the possibility of a lawsuit against it should prevent payoff since Thermo was a solvent entity and could pay any sum it might be required to pay in a subsequent suit.

10

It is clear from reading the transcript that Thermo consented to the jurisdiction of the federal court for any future proceedings. However, when Thermo's words are read in light of the context in which they were made, the Court can not say that Thermo intentionally and knowingly consented to the jurisdiction of the Bankruptcy Court on non-core claims, or waived its right to a jury trial as to unspecified claims that were filed eight months later. Any waiver of a constitutional right must be clearer than the waiver evidenced by Trinsic's counsel's statements. *Control Center*, 288 B.R. at 280 (stating that "a small minority of courts have concluded that a defendant does not relinquish the Seventh Amendment right to a jury trial . . . unless the submission clearly evidences a voluntary and intentional relinquishment of that right"). Therefore, the Court will not deny the constitutional right of a jury trial based on Thermo's comments at the March 22, 2007 hearing.

### D.

### CONSENT BY FILING OF COUNTERCLAIMS

Trinsic contends that Thermo consented to the jurisdiction of the Bankruptcy Court by choosing to file its counterclaim and third-party claim along with its answer to the adversary complaint on December 20, 2007. Rule 13 of the Fed. R. Civ. P. states that a defendant must bring a counterclaim against a plaintiff for any action it has against the plaintiff arising from the same transaction or occurrence as the original claim. Rule 7013 of the Fed. R. Bankr. P. states that Fed. R. Civ. P. 13 applies in adversary cases; except, it defines compulsory counterclaims in the bankruptcy context as only those claims that "arose after the entry of an order for relief." Therefore, under Fed. R. Civ. P. 13, Thermo's counterclaim was compulsory in the normal context, but under Fed. R. Bankr. P. 7013, it was not compulsory, only permissive, in the

bankruptcy court context. Did Thermo waive its right to a jury trial by filing a "permissive" counterclaim in the Bankruptcy Court?

Two theories have emerged on this issue: (1) the waiver theory, and (2) the conversion theory. Under the waiver theory, the filing of a petition or claim in a bankruptcy case (even a counterclaim) subjects the party to the jurisdiction of the bankruptcy court and waives any right to a jury trial. Under the conversion theory, the filing of a claim in bankruptcy court "invokes 'the process of allowance and disallowance of claims,' [and] the claim is converted from a legal dispute over money into an equitable dispute over a share of the estate." *In re NDEP*, 203 B.R. at 910 (quoting *Billing v. Ravin, Greenberg & Zackin, P.A.*, 22 F.3d 1242, 1253 (3rd Cir. 1993)).

The majority of courts have held that the filing of any counterclaim, "permissive or compulsory, constitutes a 'claim' against the estate which submits the party making the claim to the equitable jurisdiction of the bankruptcy court and which divests the party of its right to a trial by jury." *In re NDEP*, 203 B.R. at 911; *see also, e.g.*, *DePaola v. Price (In re Price),* 346 B.R. 857 (Bankr. M.D. Ala. 2006); *Leshin v. Welt (In re Warmus*), 276 B.R. 688 (S.D. Fla. 2002); *Anderson v. Sinchon (In re Southern Textile Knitters, Inc.*), 236 B.R. 207 (Bankr. D. S.C. 1999); *Murray v. Richmond Steel & Welding Co. (In re Hudson*), 170 B.R. 868 (E.D. N.C. 1994); *Segal v. Cal. Energy Dev. Corp.*, 167 B.R. 667 (D. Utah 1994); *Peachtree Lane Assocs., Ltd. v. Grandader,* 175 B.R. 232 (N.D. Ill. 1994); *Allied Cos., Inc. v. Holly Farms Foods, Inc. (In e Allied Cos., Inc.*), 137 B.R. 919 (S.D. Ind. 1991). However, under the waiver theory, only a few courts have made a distinction between permissive counterclaims and compulsory counterclaims under Fed. R. Civ. P. 13(a). *See In re NDEP, supra*; *Billing*, *supra*; *Beard v. Braunstein*, 914 F.2d 434 (3rd Cir. 1990). These courts conclude, that a party does not waive its right to a jury

12

trial or submit to the jurisdiction of the bankruptcy court simply "by bringing a counterclaim that is permissive under the bankruptcy rules but that would have been compulsory under the *Federal Rules of Civil Procedure*. By statute, the bankruptcy rules "'shall not abridge, enlarge, or modify any substantive right.' 28 U.S.C. § 2075. The right to a trial by jury is a substantive right." *In re NDEP*, 203 B.R. at 910. Therefore, Bankruptcy Rule 7013 should not be interpreted to divest a party of the substantive, constitutional right to a jury trial. This court agrees with this rationale.

The second theory, the conversion theory, is based on the reasoning of *Langenkamp v. Culp*, 498 U.S. 42 (1990). *Langenkamp* held that the filing of a claim was a voluntary submission by the filing party to the equitable jurisdiction of the bankruptcy court because it triggers the claims allowance process. With the conversion theory, a party loses its right to a jury trial by filing a counterclaim (permissive or compulsory) that seeks a piece of the bankruptcy estate. *Control Center*, 288 B.R. at 282. This theory treats the filing of a counterclaim the same as the filing a proof of claim - both initiating the allowance or disallowance of the claims process. However, other courts have held the filing of a counterclaim is not the equivalent of filing a proof of claim and does not trigger the claims allowance process. "The Supreme Court has stated that 'legal claims are not magically converted into equitable issues by their presentation to a court of equity.'" *In re NDEP*, 203 B.R. at 912 (quoting *Ross v. Bernhard*, 396 U.S. 531, 538 (1970)). Therefore, courts must determine whether or not the adjudication of the adversary case is part of the claims allowance or disallowance process before concluding that a claim has been converted and a jury trial right has been extinguished. The conversion theory does not apply to this case. Thermo has not submitted a proof of claim to trigger the claims allowance process. The counterclaim of Thermo is only a request for indemnity and/or

13

reimbursement under the receivables agreement for any amounts it may be required to pay Trinsic. This type of counterclaim raises no new stand-alone claims against the estate. Thermo has filed a counterclaim in response to the adversary case served on it, but without a clear submission to the Bankruptcy Court, it is unjust to declare that Thermo has given up its right to a jury trial. *Id.*

It is clear that the core matters involving an accounting are equitable remedies and the Court has jurisdiction to hear those matters that seek relief under the Bankruptcy Code. The Court recommends to the District Court that it allow the Bankruptcy Court to retain its jurisdiction over the accounting claims because there is not sufficient cause for withdrawal. However, as to the other claims, counterclaims and third party claims, "[t]his Court is unable to accept the view that Congress either intended or has the right to strip Seventh Amendment protection from traditional actions-at-law simply by vesting jurisdiction to decide then in the bankruptcy court. While there is broad language in *Katchen v. Landy*[, 382 U.S 323 (1966),] that might support such a view, that decision rests on the fact that the defendant there had consented to the jurisdiction of the bankruptcy court by filing a claim, " and Thermo has not filed a proof of claim. *Eisenberg v. Guardian Group, Inc. (In re Adams, Browning & Bates, Ltd.)*, 70 B.R. 490, 497 (Bankr. E.D. N.Y.1987).

E.

WITHDRAWAL OF REFERENCE FOR ACCOUNTING CLAIMS

IN COUNTS 9 AND 10

The Court must finally consider whether the accounting claim should be withdrawn, along with the other claims, to District Court. As stated earlier, there must be "cause" for such a

withdrawal right or need. Count 9 requests an accounting from Trinsic as to disposition of the funds in the "Contingency Account" of $1.45 million of Trinsic funds that Thermo held. Count 10 seeks an accounting of all payments made by Trinsic customers to the lock box controlled by Thermo.

If the District Court approves the report and recommendation of the Bankruptcy Court in this matter, there is no cause for withdrawal of the reference as to the two accounting claims. In fact, both Counts 9 and 10's accounting relief will necessarily be an integral part of the discovery process for the trial of Counts 1-9 and 11. Therefore, efficiency dictates these claims remain with the Bankruptcy Court.

## CONCLUSION

Thermo should not be denied its Seventh Amendment right to a jury trial on its legal claims for three reasons. First, Thermo timely asserted its Seventh Amendment right to a jury trial in its answer and counterclaim and motion to withdrawal on December 20, 2007. All of the counts of the complaint (except the accounting counts) seek monetary relief against Thermo; all seek legal remedies, not equitable ones. But for the bankruptcy case, all of the counts (except the accounting count) would be entitled to a jury trial. The presumption against waivers of fundamental rights dictates that Thermo's jury trial right should be preserved. *See Borgh*, 953 F.2d at 1311. Second, Thermo has not filed a proof of claim in this bankruptcy matter. Thus, under case law, it has not submitted to the equitable claims allowance/disallowance jurisdiction of the bankruptcy court. *Germain*, *supra*. Finally, Thermo's counterclaim was a compulsory counterclaim under Fed. R. Civ. P. 13 and, therefore, it was not a voluntary submission to the Bankruptcy Court. *Control Center*, 288 B.R. at 284 (citing *Beard*, 914 F.2d at 442). The Fed. R.

15

Bankr. P. 7013 "states that a party 'need not' bring a counterclaim that would ordinarily be considered compulsory under Fed. R. Civ. P. 13(a). . . The rule does not state that a party *should* not bring the claim or that bringing the claim will result in the waiver of a Seventh Amendment right to a trial by jury." *In re NDEP*, 203 B.R. at 912. "[I]t would not serve justice to find that even though a party has affirmatively and timely asserted its Seventh Amendment right to a trial by jury, it would nevertheless implicitly waive that right by bringing counterclaims that arose out of the same occurrence or transaction as the claims asserted against it. The constitutional right to a trial by jury is not so ephemeral." *Id.* at 913.

A bankruptcy court cannot conduct a jury trial without the consent of the parties. 28 U.S.C. § 157(e). Thermo has not consented and states that it will not consent to allowing the Bankruptcy Court to preside over the claims where it has a jury trial right. Furthermore, the fact that the conversion claims and breach of contract claim are non-core matters weighs in favor of transferring the matter to the District Court since it would review de novo any findings of the Bankruptcy Court. Fed. R. Bankr. P. 9033(d).

THEREFORE THE COURT REPORTS AND RECOMMENDS to the District Court that it grant the defendant's motion to withdraw the reference of this case as to all claims except the accounting claims in Counts 9 and 10, but delay the withdrawal until the Bankruptcy Court certifies that the case is ready for trial.

Dated: February 25, 2008

*/s/ Margaret A. Mahoney*
MARGARET A. MAHONEY
U.S. BANKRUPTCY JUDGE

16