UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF ALABAMA

IN RE:

TRINSIC, INC. ET. AL.,                                              Case No. 07-10324
        Debtors.

MICHEL REIBLING, TRUSTEE                                            Adv. Case No. 07-1089
OF THE ESTATES OF
TRINSIC, INC.,
TRINSIC COMMUNICATIONS, INC.,
TOUCH 1 COMMUNICATIONS, INC.,
Z-TEL NETWORK SERVICES, INC., and
Z-TEL CONSUMER SERVICES, LLC.

        Plaintiff,

vs.

THERMO CREDIT, L.L.C.,

        Defendant.

## ORDER DENYING THE MOTION TO DISMISS THERMO'S THIRD-PARTY CLAIMS AGAINST HORACE J. DAVIS, III AND DECLARING LOUISIANA LAW TO BE APPLICABLE

Richard M. Gaal, attorney for Trustee, Michael C. Reibling
Russel Myles, attorney for Trustee, Michael C. Reibling
Jeffery J. Hartley, attorney for Thermo Credit, LLC

      Horace J. Davis, III has filed a Motion to Dismiss Thermo Credit, LLC's Third Party Claims against him. The Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Order of Reference of the District Court. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I), and the Court has authority to enter a final order. For the reasons indicated below, the Court is denying the Motion to Dismiss Third-Party Claims Against Horace J. Davis, III and declaring that Louisiana law is applicable to the tort claims in this action.

FACTS

On or about March 28, 2005, Trinsic Communications, Inc. and Touch 1 Communications, Inc (referred to collectively as "Trinsic") entered into a Receivables Sales Agreement (the "Agreement") with Thermo Credit, LLC ("Thermo"). Under the Agreement, Thermo would purchase accounts receivable of Trinsic. Pursuant to the Agreement, Trinsic "represent[ed] and warrant[ed] to Thermo, as of the date of the initial Purchase Date and as of each Purchase Date thereafter" that there was "no court order, judgment, writ, pending or threatened action, suit or proceeding, of a material nature against or affecting the Seller, its officers, managers or directors, or the property of [Trinsic], in any court or tribunal, or before any arbitrator of any kind or before or by any Governmental Authority . . . for payment of money in excess of $50,000." Any disconnect notices received by Trinsic, were required under the Agreement to be turned over to Thermo before a Purchase Date. According to the Agreement, Thermo was under no obligation to purchase receivables in the event of a default by Trinsic. Trinsic was further obligated under the Agreement to indemnify most third-party claims that arose out of or related to the Agreement. The Agreement also contained a choice of law provision that provided Louisiana law would govern.

Trinsic filed a bankruptcy petition on February 7, 2007. On November 16, 2007, Trinsic filed an adversary case against Thermo, and Thermo brought counterclaims against Michael Reibling, Trustee of the Debtors' estates and third-party claims against Davis, the former CEO of Trinsic. Thermo claimed that Davis intentionally interfered with the Agreement and fraudulently concealed information. The basis for Thermo's claims against Davis arise from two 2007 business decisions or occurrences. First, on January 10, 2007, Davis settled an infringement case brought against Trinsic by Oracle USA, Inc., for $335,401.82. Thermo claims it was unaware of

this suit or settlement until Oracle USA, Inc. filed an objection in Trinsic's bankruptcy case. Thermo asserts that neither Davis nor any other Trinsic representative told it of the suit and/or settlement before any of its Purchase Dates after January 10, 2007, and, therefore, breached the Agreement. Second, Trinsic received disconnect notices that were not provided to Thermo pursuant to the Agreement. Thermo alleges that on or about January 16, 2007, Trinsic received a written disconnect notice from Verizon due to its payment default in the amount of approximately $1.9 million. According to the notice, this amount was due by February 2, 2007 or disconnection of services would begin thereafter. On or about January 23, 2007, Trinsic received the same type of notice from AT&T. AT&T's notice was for a default amount of approximately $1.6 million that was due in full by February 5, 2007 to avoid disconnection. Thermo claims that these two disconnect notices were inadvertently disclosed to Thermo by a principal of Trinsic on January 24, 2007.

In response to counterclaims, Davis moved pursuant to Bankruptcy Rules 7009 and 7012 and Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure to dismiss Thermo's third-party claims against him for failure to state a claim for which relief can be granted. Davis asserts that: (1) Alabama law (not Louisiana law as Thermo suggests) should be applied because Thermo's tort claims are outside the scope of the Receivables Sales Agreement that contains the Louisiana choice of law provision and Alabama's conflict of laws doctrine of *lex loci delicti* would require Alabama substantive law to be applied; (2) under Alabama law, Thermo has no claim of intentional interference with a contract because Davis was not a "stranger" to the Receivables Sales Agreement;[1] and (3) Thermo failed to plead with particularity its fraudulent

---

[1] Trinsic did agree at the hearing that if Alabama law is not applicable, Thermo does state a claim under Louisiana law.

concealment claim against Davis as required by Rule 9 of the Federal Rules of Civil Procedure. A hearing on Davis' Motion to Dismiss Thermo's Third Party Claims against him was held May 5, 2008.

LAW

Trinsic, the moving party, bears the burden of proving its motion to dismiss under Rule 12(b)(6). *Wilson Auto Enterprises, Inc. v, Mobil Oil Corp.*, 778 F.Supp. 101, 103 (D.R.I. 1991). For purposes of testing the sufficiency of Thermo's claims, the Court must presume the allegations in its complaint are true and view the pleadings in the light most favorable to Thermo, the nonmoving party. *Id.* at 104.

Trinsic moves for dismissal of Thermo's third-party claims against Davis pursuant to Rules 12(b)(6) and 9(b) of the Fed. R. Civ. Proc.[2] Trinsic contends that Thermo has failed to state a claim upon which relief can be granted because, under Alabama law, a party must be a stranger to a contract before being capable of liability for intentional interference with a contract, and Davis was not a "stranger" to the Receivables Sales Agreement. The Court agrees that Alabama law requires, as an element o a claim for intentional interference, that one must be a stranger to the contract at issue. *Nimbus Technologies, Inc. v. SunnData Products, Inc.*, 484 F.3d 1305 (11th Cir. 2007); *McFarlin v. Conseco Services, LLC*, 381 F.3d 1251 (11th Cir. 2004). Under Alabama law, Davis does not have to be a party to the Agreement to be protected under the "stranger" doctrine. However, Trinsic's Rule 12(b)(6) argument rises and falls with the applicability of Alabama law. Trinsic even conceded at the hearing that if Louisiana law was

---

[2] Rules 12(b)(6) and 9(b) of the Fed. R. Civ. Proc. are applicable in adversary proceedings pursuant to Bankruptcy Rules 7012 and 7009 respectively.

applicable, Thermo has a claim. Given that the parties disagree as to whether Alabama or Louisiana law must be applied, this is where the Court's analysis will begin.

Thermo contends that Louisiana law applies pursuant to the consent provision in the Agreement or must by Alabama's choice of law doctrine. Trinsic contends that, pursuant to Alabama's choice of law provision, Alabama law would apply. Thermo's claims against Davis are founded in tort, not in contract. *Williams v. Norwest Financial Alabama Inc.*, 723 So.2d 97, 101 (Ala. Civ. App. 1998) (concluding the traditional rule of *lex loci delicti* supercedes a contractual choice of law provision when the claim is brought in tort and not in contract). Furthermore, Davis did not sign the Agreement and is not individually a party to the Agreement. Therefore, the Court concludes that Louisiana law is not applicable pursuant to the contractual choice of law provision in the Agreement. An examination of Alabama's choice of law doctrine is necessary to determine whether or not Alabama or Louisiana law will apply.

Alabama continues to apply the traditional rule of *lex loci delicti* to tort claims like Thermo's. *Colonial Life & Acc. Ins. Co. v. Hartford Fire Ins. Co.*, 358 F.3d 1306, 1308 (11th Cir. 2004). This doctrine focuses on identifying the "site of the injury, or the site of the event that created the right to sue." *Glass v. Sourthern Wrecker Sales*, 990 F.Supp. 1344, 1347 (M.D. Ala. 1998). Trinsic argues that any alleged injury or wrong by Davis occurred (if at all) in Alabama, not Louisiana. Trinsic asserts that since Davis and Trinsic are domiciled in Alabama, and all Davis' work is conducted in Alabama, any actions or inactions taken by Davis would have occurred in Alabama and, if Davis is liable, Alabama would be the state where the wrong or injury occurred. The Eleventh Circuit has faced this question and has ruled that "[t]he place of the wrong is the jurisdiction where the harm was suffered or where the last event necessary to make an actor liable for the alleged tort takes place." *Velten v. Regis B. Lippert, Intercat, Inc.*,

985 F.2d 1515, 1521 (11th Cir. 1993). When the injury is financial, as Thermo's alleged harm is, the place of the wrong or injury is where the financial injury is felt. *See The Bradbury Co. v. Teissier-duCros*, 387 F.Supp.2d 1167, 1173 (D.Kan. 2005) (finding the injury to have occurred in the state where the plaintiff resided and suffered a financial injury); Restatement (First) of Conflict of Laws § 377 cmt. a, illus. 4 (1934) ("When a person sustains loss by fraud, the place of wrong is where the loss is sustained, not where fraudulent representations are made"). Courts in Alabama faced with financial injury claims based in fraud, have consistently held that under the doctrine of *lex loci delicti*, the place of the injury is where the economic harm was suffered. *Glass*, 990 F.Supp. at 1348; *Chambers v. Cooney*, 2007 WL 2493682, *11 (S.D. Ala. 2007). Any economic harm in this case was clearly suffered in Louisiana - Thermo is located in Louisiana, all of Thermo's banking is and was transacted in Louisiana, and all of Thermo's principals who suffered financially from the alleged claims resided and still reside in Louisiana. After review of Alabama's rule and application of *lex loci delicti*, the Court concludes that Louisiana is the place where the economic and financial harm was suffered; it was where the last event necessary to make a party liable for an alleged tort took place. Therefore, Louisiana is the place of the alleged injury or wrong and pursuant to Alabama's choice of law provision, Louisiana substantive law should be applied to this case. Therefore, Thermo has adequately stated a claim against Davis for intentional interference with a contract. *9 to 5 Fashions, Inc. v. Spurney*, 538 So.2d 228 (La. 1989) (stating the elements of a cause of action for intentional interference with a contract).

   Trinsic also moves for dismissal of the fraudulent concealment claim against Davis. Trinsic alleges Thermo failed to plead its claim with particularity as required by Rule 9 of the Federal Rules of Civil Procedure. "The particularity rule serves an important purpose in fraud

actions by alerting defendants to the 'precise misconduct with which they are charged' and protecting defendants 'against spurious charges of immoral and fraudulent behavior.'" *Durham v. Business Mgmt. Assocs.*, 847 F.2d 1505, 1511 (11th Cir. 1988) (quoting *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 971 (3d Cir. 1984)); *see also United States of America v. McInteer*, 470 F.3d 1350, 1358 (11th Cir. 2006) (acknowledging Rule 9(b) is to ensure only claims with merit proceed to the discovery process and baseless claims that are made only to extract a settlement or execute a fishing expedition are dismissed). The Eleventh Circuit has stated that "Rule 9(b) is satisfied if the complaint sets forth '(1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.'" *Tello v. Dean Witter Reynolds, Inc.*, 494 F.3d 956, 972 (11th Cir. 2007) *(quoting Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001)). The requirements of Rule 9(b), however, 'must not abrogate the concept of notice pleading' of Rule 8(a) of the Fed. R. Civ. Proc. *Ziemba*, 256 F.3d at 1202 (quoting *Durham,* 847 F.2d at 1511). The Eleventh Circuit has also acknowledged that there are ways to satisfy Rule 9(b) beyond pleading the date, time, and place, *Tello*, 494 F.3d at 973 (citing *Durham*, 847 F.2d at 1511 (holding that allegations in the complaint along with a submitted affidavit describing events satisfied Rule 9(b))), and has stated that Rule 9(b) motions are to be decided on a case-by-case basis. *United States of America v. McInteer*, 470 F.3d 1350, 1358 (11th Cir. 2006).

Thermo's counterclaim states that Trinsic received a disconnect notice on January 16, 2007 from Verizon and on January 23, 2007 from AT&T. Copies of both of these notices were

attached to its complaint. Thermo explains in its pleading how it never received a copy of either disconnect notice, nor did it receive notification from Trinsic or Davis regarding either notice. Thermo claims that it only learned of such notices on January 24, 2007 from Trinsic's "largest equity holder." Thermo provides the Agreement provisions that defined Trinsic's duties and obligations which included notifying Thermo of any such disconnect notice. Thermo identifies the Agreement provisions that relieve it from its duty to purchase any receivables upon any default by Trinsic. From the details stated in the pleading, Thermo has alerted Davis to the 'precise misconduct with which [he is] charged.' *Durham,* 847 F.2d at 1511. Thermo does not give the name of Trinsic's "largest equity holder," but this omission is not a detail that makes the pleading nonspecific or too general for Davis to know exactly the "when, what, where, and how" of Thermo's allegations. *See Melder v. Morris,* 27 F.3d 1097, 1100 n. 5 (5th Cir.1994) (concluding that pleading with particularity under Rule 9(b) was analogous to the details in "the first paragraph of a newspaper story"). Thermo's claims regarding Davis' conduct surrounding the circumstances of the Oracle USA, Inc. settlement also alerted Davis to the 'precise misconduct with which [he is] charged.' *Durham,* 847 F.2d at 1511. Thermo provides the January 10, 2007 date of the settlement and the parties involved. Thermo states the exact time it learned of the settlement (when Oracle USA, Inc. objected in Debtors' bankruptcy proceeding). Thermo states that each time after the settlement was signed, Davis mislead Thermo by not notifying it of the Oracle USA, Inc. settlement. Thermo does not give the exact dates of every Purchase Date after January 10, 2007 when it purchased receivables from Trinsic without knowledge of the settlement. However, this information could be obtained easily from banking records and is not an omission that leaves Trinsic unsure or questioning the exact allegation of Thermo.

The pleading states exactly what information Davis allegedly omitted communicating to Thermo and the dates from which Davis knew such information and should have notified Thermo. The complaint identifies the exact documents (disconnect notices and settlement with Oracle USA, Inc.) and instances where Davis fraudulently concealed information from Thermo or intentionally interfered with the Agreement. There are details of Davis' alleged intentional interference with the Agreement between Trinsic and Thermo that are not plead, but Thermo really has no way of knowing some of these specifics without first being given the opportunity to go through the discovery process. To satisfy the last prong of the Rule 9(b) test, Thermo identifies what Davis gained through the alleged torts - Davis, who was the CEO of Trinsic at the time, gained money for Trinsic from Thermo's purchasing receivables that it was under no obligation to purchase because the Agreement had been breached.

A pleading is intended to alert a defendant to why he or she is being sued. By requiring specific details and information, Rule 9(b) helps to ensure that any allegations of fraud are real and not conjured up by a plaintiff to embarrass or harass a defendant. However, the need for a fraud complaint to be stated with particularity must be read in conjunction with Rule 8 allowing for a short plain statement showing that the plaintiff is entitled to relief. Rule 9(b) cannot be assessed in a vacuum. *S.E.C. v. Willis*, 777 F.Supp. 1165 (S.D. N.Y. 1991). Thermo's pleading contains specific enough details for Davis to know the exact basis for Thermo's fraud allegations. Thermo states with particularity the circumstances that it alleges constitutes fraud. When the details contained in Thermos' pleading are weighed against the Eleventh Circuit's four pronged test and Rule 8, this Court concludes that Rule 9(b) is satisfied.

FOR THESE REASONS, the Motion to Dismiss Thermo's Third-Party Claims Against Horace J. Davis, III, is DENIED.

Dated: May 19, 2008

/s/ Margaret A. Mahoney
MARGARET A. MAHONEY
U.S. BANKRUPTCY JUDGE